UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK DAVID FARIDA,

    Plaintiff,                               Civil Action No. 18-CV-10249

vs.                                          HON. BERNARD A. FRIEDMAN

OAKLAND COUNTY SHERIFF DEPUTY
MICHAEL SUMMERS and
OAKLAND COUNTY SHERIFF DEPUTY
MATTHEW LEGGAT,

    Defendants.
_____/

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is presently before the Court on defendants' motion for summary judgment [docket entry 16]. Plaintiff has filed a response in opposition, and defendants have filed a reply. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this motion without a hearing.

*Background*

This is a malicious prosecution action. Plaintiff alleges that defendants Summers and Leggat, both of whom are Oakland County sheriff's deputies, lacked probable cause to arrest and prosecute him for fourth degree criminal sexual conduct.[1] Plaintiff was

---

[1] Plaintiff was charged with violating Mich. Comp. Laws § 750.520e(1)(b), which defines fourth degree criminal sexual conduct as "sexual contact with another person" when "[f]orce or coercion is used to accomplish the sexual contact." "Sexual contact" is defined as including "the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts." Section 750.520a(n). The term "intimate parts" includes "the primary genital area." Section 750.520a(c).

charged with this offense based on information provided by the victim, Kelly McGregor, and her boyfriend, Jonathan Swetech. On October 26, 2014, McGregor and Swetech were attending a Halloween party at a venue in Commerce Township, Michigan. As they were leaving the dance floor, a man in a black pirate costume walking in the opposite direction bumped into McGregor, slipped his hand under her skirt, grabbed her crotch, and continued walking. McGregor immediately told Swetech what had happened, and Swetech confronted the perpetrator. A few minutes later, McGregor and Swetech reported the incident to Leggat, who was a short distance away in his patrol vehicle. McGregor and Swetech returned to the venue with Leggat, and Swetech identified plaintiff as the pirate-costumed man he had confronted. When questioned by Leggat, plaintiff denied that he had touched McGregor.

On November 1, 2014, McGregor and Swetech provided Leggat with written witness statements. McGregor wrote that when she was assaulted she "instantly stopped walking and told Jon what happened. Jon was able to stop him quickly and they exchanged words." Defs.' Ex. A, PageID 113. Swetech wrote that

> Kelly was walking ahead of me holding my hand. I saw a male to our right who made an unusual movement. My girlfriend told me that he had just reached up her skirt with his hand and grabbed her crotch. . . . I confronted the male, who denied it . . . . I stepped away and kept my eye on him. . . . Deputy Leggat promptly came inside the facility with us. I located the man again and we were all escorted backstage for questioning. The man wore all black, had a black bandana on his head and fake dreadlocks to his costume.

*Id.*, PageID 112. On November 4, 2014, plaintiff provided Leggat with a written witness statement, denying that he had "touched anyone at the party inappropriately." *Id.*, PageID

2

117.

Based on this information, Leggat requested an arrest warrant. On November 7, 2014, the prosecutor "furthered" the request with instructions that plaintiff be offered the opportunity to take a polygraph. Defs.' Ex. B, PageID 119. On January 22, 2015, plaintiff was interviewed by defendant Summers. Defs.' Ex. A, PageID 102. Plaintiff again denied that he had touched anyone at the party, and he declined to take a polygraph examination. *Id.* On January 27, 2015, the prosecutor noted that the previous day Summers informed her that plaintiff had declined to take a polygraph. Defs.' Ex. C. She also requested further investigation for "any and all recordings. The bar claimed there is no video of this incident." *Id.* Some time between January 27 and February 5, 2015, the prosecutor authorized the warrant request. Defs.' Ex. E, PageID 129.

On February 5, 2015, McGregor submitted a second written witness statement to the sheriff's department in which she indicated that the perpetrator "reached out with what I believe was his right hand and reached up my skirt and grabbed at my vagina. . . . I instantly stopped walking and told Jon what happened. Jon was able to stop him quickly and they exchanged words." Defs.' Ex. A, PageID 113.

The same day, Summers appeared before a magistrate for a "swear to." Defs.' Ex. D. He testified that "on October 26th, 2014, while attending a Halloween costume party at the On the Dunes Bar, . . . Patrick Farida grabbed Kelly McGregor's vagina. . . . F[a]rida does not know McGregor and they had no relationship. He just reached out and grabbed her. McGregor's boyfriend, Dr. Swetech, was also present and confronted Farida right as it

3

happened." *Id.*, PageID 125. Based on this testimony, the magistrate issued a warrant for plaintiff's arrest. *Id.*, PageID 126; Defs.' Ex. E, PageID 130-31.

On February 10, 2015, plaintiff was arrested and arraigned. Defs.' Ex. A, PageID 110; Defs.' Exs. F and G. Bond was set at $2,000, which plaintiff posted. Defs.' Ex. G, PageID 140.

Plaintiff's preliminary examination was held on July 29, 2015. Defs.' Ex. H. The court granted his motion for permission to sit in the gallery rather than at counsel table because his attorney believed there was "an issue of identification." *Id.*, PageID 146, 149. McGregor testified that "a man came, kind of up on my right-hand side, and as I was walking reached up my skirt and grabbed my private area as we were walking." *Id.*, PageID 153. Further, "immediately after it happened I turned around and I grabbed Jon and Jon grabbed him." *Id.*, PageID 155. She agreed that Jon "grabbed the individual that grabbed [her]." *Id.*, PageID 156. McGregor was unable to identify the perpetrator in court. *Id.*, PageID 158. She testified that after speaking with Leggat, "we came back inside and they immediately found the guy who grabbed me." *Id.*, PageID 160.

Swetech testified that he was walking five to ten feet behind McGregor when he "saw someone come towards her. She kind of startled and she came back and told me immediately." *Id.*, PageID 172-73. Swetech did not see the grabbing "because she was in between us," but McGregor pointed out the man who had grabbed her and Swetech confronted him. *Id.* The perpetrator "was wearing a costume. It was mostly black. I believe, he had a bandana of some sort. And had some dreadlocks that appears to be, like,

4

a wig." *Id.*, PageID 174. From among those seated in the gallery, Swetech identified plaintiff as the perpetrator. *Id.*, PageID 175. Swetech told Leggat "what he was wearing and we immediately went back in and saw him again." *Id.*, PageID 178. Swetech indicated that he "confirmed[ed] that that was the individual that [he] had previously described." *Id.* Swetech testified that he did not recall seeing others at the party in similar costumes. *Id.*, PageID 189. At the party, Swetech identified plaintiff as the perpetrator to Leggat. *Id.*, PageID 195.

Leggat testified that "[t]he first question I asked was whether or not they [McGregor and Swetech] would be able to identify him and they both stated, yes, they would be able to." *Id.*, PageID 199. Leggat accompanied them inside, and Swetech "pointed past me and said, 'That's him.'" *Id.*, PageID 204. Leggat did not notice anyone else in a "full black costume." *Id.* In the courtroom, Leggat identified plaintiff as the person Swetech pointed out as the perpetrator. *Id.*, PageID 204-06. Leggat testified that plaintiff denied having touched McGregor. *Id.*, PageID 206-07. Leggat testified that he was "100 percent positive" that Swetech "was directly behind me and when we – when we approached the – the suspect, he pointed actually past me and said, 'That's him.'" *Id.*, PageID 212. Leggat also indicated that McGregor and Swetech "described exactly what he was wearing and then pointed directly to him." *Id.*, PageID 214.

At the conclusion of the preliminary examination, the court found that there was probable cause to believe that plaintiff "was properly identified and was the person who committed the crime." *Id.*, PageID 224.

5

In circuit court, plaintiff moved to quash. Defs.' Ex. J., PageID 236. The court denied the motion for the following reasons:

> [T]he probable cause hearing is the probable cause hearing. It's not to say that a jury ultimately will decide that it was the defendant who committed the crime. But under these circumstances where he identified in open court the defendant as the person that he saw bumping into his girlfriend, and . . . the other identification happens when he – he says that the person was wearing, you know, the long dreadlocks and the bandanna when he – they go out and contact the police who happens to be patrolling through the parking lot, they come in, he identifies the defendant to the police officers.
> So, you know, the identification can be wrong. There's – but that's what a trial is all about. It's not if there's – was there sufficient evidence to support the probable cause determination that a crime was committed? Yes, you have heard testimony, very clear testimony. Was there probable cause to believe that this defendant committed that crime? Yes, you have the testimony of the complaining witness and her boyfriend.
>
> \* \* \*
>
> I have read the . . . preliminary exam transcript. And I believe that it contains an identification of the defendant. There is an in-court identification, and there's the description of how they determined who he was at the time that the event occurred.

*Id.*, PageID 238-39, 245. On June 6, 2016, plaintiff was tried and acquitted.

In addition to these facts, plaintiff alleges that "there were many individual at the Halloween Party . . . who were white males wearing pirate themed Halloween costumes, including black clothes, dreadlock wigs, and/or bandanas," and that "Leggat did not make any effort to identify or question any of the several other individuals at the bar that were wearing [such costumes]." Compl. ¶¶ 10, 19. Plaintiff also alleges that he "did not confess

6

or admit to the crime . . . but Defendant Summers, in order to obtain approval of his warrant request, falsely advised the Oakland County Prosecutor's Office that such an admission was made."[2] *Id.* ¶ 26. Further, plaintiff alleges that Summers threatened and cajoled him in an attempt to coerce him into confessing, but that plaintiff maintained his innocence, and that defendants improperly withheld a video-recording of Summers' interrogation of plaintiff until shortly before trial. *Id.* ¶¶ 27-30, 34-40.

Count I of the complaint asserts a malicious prosecution claim against both defendants under federal law. Here plaintiff alleges that defendants violated his Fourth and Fourteenth Amendment rights "with their wrongful arrest and prosecution of [him]." *Id.* ¶ 46. In Count II, plaintiff asserts a malicious prosecution claim under state law, alleging that defendants "initiated and/or continued the proceedings against the Plaintiff without probable cause." *Id.* ¶ 62. Count III, which asserts a false arrest claim against both defendants under state law, has been dismissed by stipulation. And in Count IV plaintiff asserts a claim against defendant Summers for intentional infliction of emotional distress based on "his efforts to bring false charges against the Plaintiff, his fabrication of evidence, and the patently improper and abusive manner in which he conducted the interrogation of the

---

[2] In a "Case Report" dated January 30, 2015, Summers wrote that during his January 22 interview plaintiff "still denied that he had touched anyone but he began to nod his head and tears began to fill up his eyes. I asked Farida to take a polygraph and he refused stating his attorney advised him not to do that." Defs.' Ex. A, PageID 106. It is unclear whether Summers forwarded this report to the prosecutor, but the prosecutor's "Initial Case Evaluation" dated January 27, 2015, noted there were no admissions. Defs.' Ex. C. During the "swear to" before the magistrate, Summers said nothing about his interview with plaintiff. Defs.' Ex. D. Nor was this interview mentioned by Leggat at plaintiff's preliminary examination. Defs.' Ex. H.

Plaintiff." *Id.* ¶ 76.

*Defendants' Motion for Summary Judgment*

Defendants seek summary judgment on various grounds. Under Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute as to any *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Viewing the evidence in the light most favorable to the opposing party, summary judgment may be granted only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party. *See id.* at 248-50; *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478-80 (6th Cir. 1989). In other words, "[a] material issue of fact exists where a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, could return a verdict for that party." *Vollrath v. Georgia-Pacific Corp.*, 899 F.2d 533, 534 (6th Cir. 1990). "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).

*Malicious Prosecution (Counts I and II)*

Plaintiff's federal malicious prosecution claim alleges that defendants wrongfully arrested and prosecuted him, and his state malicious prosecution claim alleges that defendants "caused and/or continued a prosecution" against him without probable cause

and with malice. Compl. ¶¶ 46, 60, 62-63. Under both state and federal law, plaintiff must show that defendants lacked probable cause to arrest him (to the extent his claims are based on his arrest) or to bring and pursue charges (to the extent his claims are based on his prosecution). *See Sykes v. Anderson*, 625 F.3d 294, 305, 308 (6th Cir. 2010); *Hitson v. City of Eastpointe*, No. 335762, 2018 WL 2944208, at *6-7 (Mich. Ct. App. June 12, 2018). Further, under Michigan law "the only situation in which an action for malicious prosecution would properly lie is where a police officer knowingly swears to false facts in a complaint, without which there is no probable cause." *King v. Arbic*, 159 Mich. App. 452, 466 (1987) (quoting *Belt v. Ritter*, 18 Mich. App. 495, 503 (1969)).

Probable cause means "a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). Further,

> [i]n order to determine whether an arrest was supported by probable cause, we must determine whether, at the time of the arrest, the "facts and circumstances within [the arresting officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent" person to conclude that an individual either had committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). This inquiry requires a court to examine the events leading up to the arrest and then to decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amounted to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (quoting *Ornelas*, 517 U.S. at 696, 116 S.Ct. 1657). Courts employ a totality of the circumstances test for probable cause and examine the evidence with respect to each person seized. Probable cause requires officers to "show more than mere suspicion ... [but] does not require that they

9

> possess evidence sufficient to establish a prima facie case at trial, much less evidence to establish guilt beyond a reasonable doubt." *United States v. Strickland*, 144 F.3d 412, 416 (6th Cir.1998).

*United States v. Torres-Ramos*, 536 F.3d 542, 555 (6th Cir. 2008) (alteration in original). "A law enforcement officer is entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999).

Plaintiff argues that defendants lacked probable cause to believe that he was the perpetrator, not that they lacked probable cause to believe that McGregor was the victim of a sexual assault. Yet the evidence plainly shows that defendants had probable cause to believe that they had correctly identified plaintiff as the perpetrator. McGregor told them that a man wearing a pirate costume assaulted her by grabbing her crotch as he walked by her. She immediately told Swetech what had happened, and Swetech immediately confronted the man. Both McGregor and Swetech told Leggat that plaintiff was the perpetrator, with Sewtech specifically pointing at plaintiff and saying, "That's him." Swetech again identified plaintiff at the preliminary examination. These witnesses' statements, and their identification of plaintiff, provided defendants with ample probable cause.

Moreover, the fact that a magistrate issued an arrest warrant conclusively establishes that defendants had probable cause to arrest plaintiff. *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005); *People v. Busby*, No. 305055, 2012 WL

6720592, at *1 (Mich. Ct. App. Dec. 27, 2012). And the fact that a district judge found probable cause at the conclusion of the preliminary examination and bound him over for trial conclusively establishes that defendants had probable cause to prosecute him. *Buttino v. City of Hamtramck*, 87 F. App'x 499, 503 (6th Cir. 2004); *Gaddis v. Redford Twp.*, No. 242831, 2004 WL 243363, at *3 (Mich. Ct. App. Feb. 10, 2004). The only exception to the preclusive effect ordinarily given to judicial findings of probable cause arises when defendant officers "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood and such statements or omissions [we]re material, or necessary, to the finding of probable cause." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (citation and internal quotations omitted; alteration in original). But this exception plainly does not apply in the present case because plaintiff has not identified any "false statement or omissions" by Summers (at the "swear to") or Leggat (at the preliminary examination) which were "material, or necessary, to the finding of probable cause." At both proceedings, defendants simply recounted what McGregor and Swetech had told them. Summers' allegedly false statement that plaintiff had admitted to the charge, *see supra* n.2, was never mentioned by either defendant in either proceeding.

In short, defendants are entitled to summary judgment on the malicious prosecution claims because plaintiff has failed to establish that probable cause was lacking. Indeed, defendants have demonstrated conclusively that based on information provided to them by McGregor and Swetech they had probable cause to arrest and prosecute plaintiff for committing the crime of fourth degree criminal sexual conduct.

### *Intentional Infliction of Emotional Distress (Count IV)*

Plaintiff's emotional distress claim is based on Summers' "efforts to bring false charges against the Plaintiff, his fabrication of evidence, and the patently improper and abusive manner in which he conducted the interrogation of the Plaintiff." Compl. ¶ 76.

> To establish a prima facie claim of intentional infliction of emotional distress, the plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff. *Moore, supra* at 389, 652 N.W.2d 688. "Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Lewis v. LeGrow*, 258 Mich.App. 175, 196, 670 N.W.2d 675 (2003), quoting *Graham v. Ford*, 237 Mich.App. 670, 674, 604 N.W.2d 713 (1999).

*Walsh v. Taylor*, 263 Mich. App. 618, 634-35 (2004).

This claim fails because plaintiff has not shown that Summers engaged in any extreme or outrageous conduct. First, Summers plainly did not bring false charges against plaintiff. For the reasons explained above, defendants have shown that they had probable cause to arrest and prosecute plaintiff for criminal sexual conduct. "[A]s a matter of law [a police officer] cannot be liable for intentional infliction of emotional distress" for arresting or prosecuting a suspect on probable cause. *Walsh*, 263 Mich. App. at 635 (alteration added).

Second, plaintiff has not shown that Summers fabricated evidence. Plaintiff contends that Summers did so by writing that, during the January 22, 2015, interview, plaintiff "still denied that he had touched anyone but he began to nod his head and tears

began to fill up his eyes. I asked Farida to take a polygraph and he refused stating his attorney advised him not to do that." Defs.' Ex. A, PageID 106. There is no indication that Summers suggested to the prosecutor or to anyone else, including the magistrate or the district judge, that plaintiff had confessed. Plaintiff's allegation of fabricated evidence is itself a fabrication.

Third, plaintiff has failed to show that Summers' questioning of him during the January 22 interview was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." The audio recording of the interview, Defs.' Ex. K, reveals that the interview was lengthy and that Summers sometimes used crude language, but the Court heard nothing that could be characterized as extreme or outrageous. Further, plaintiff appeared voluntarily for this interview and he was free to leave at any time. Defendant Summers is clearly entitled to summary judgment on this claim.

*Conclusion*

For the reasons stated above,

IT IS ORDERED that defendants' motion for summary judgment is granted.

s/Bernard A. Friedman
Dated: October 3, 2018           BERNARD A. FRIEDMAN
Detroit, Michigan                SENIOR UNITED STATES DISTRICT JUDGE

13

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 3, 2018.

                                        s/Johnetta M. Curry-Williams
                                        Case Manager